**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MAURICE SIMMONS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Case No. 3:07-CV-1029-M** |
| | § | **ECF** |
| **CADENCE DESIGN SYSTEMS, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

The District Court referred this case to the United States Magistrate Judge for Pretrial

Management. Before the Court for recommendation is Cadence Design Systems, Inc.'s ("Cadence")

Motion for Summary Judgment. The Court has considered the following pleadings:

1.      Cadence's Motion for Summary Judgment ("Motion") (doc. 48),

2.      Cadence's Brief in Support ("Def.'s Br.") (doc. 49),

3.      Cadence's Appendix in Support ("Def.'s App.") (docs. 50-56, 58),

4.      Plaintiff Maurice Simmons' ("Simmons") Response to Motion for Summary
        Judgment (Pl.'s Resp.) (doc. 62),

5.      Simmons' Brief in Support of Response ("Pl.'s Resp. Br.") (doc. 63),

6.      Simmons' Appendix in Support (Pl.'s App.") (docs. 64-70),

7.      Simmons' Amended Affidavit (Pl.'s Am. Aff.) (doc. 72),

8.      Cadence's Reply ("Def.'s Reply") (doc. 75), and

9.      Cadence's Appendix in Support of Reply ("Reply App.") (docs. 76-77).

**Background**

Cadence is a global technology and engineering services company with a regional office in Plano, Texas. (Pl.'s Sec. Am. Orig. Pet. ("Sec. Am. Compl.") at 1.) Cadence employed Simmons as a Lead Pre-Sales Applications Engineer ("AE3") from February 26, 2001 through February 17, 2005. (*Id*. at 2.) Simmons filed this action on April 10, 2007, in the 162nd Judicial District Court for Dallas County, Texas. (*Id*. at 1.) The Court hereby designates this action as "*Simmons II*" because this is Simmons' second Title VII action against Cadence. *See Simmons v. Cadence Design Sys. Inc*., No. 3:05-CV-1921-K(BH), 2007 WL 4104373, at *14 (N.D. Tex. Nov. 16, 2007) ("*Simmons I*"). In *Simmons I*, the District Court granted summary judgment in favor of Cadence on Simmons' Title VII claims of racial discrimination, racial harassment, and hostile work environment. *Id*.

Simmons alleges in *Simmons II* that while he was working for Cadence, he was "harassed, discriminated, and/or retaliated on by his supervisors, coworkers, and upper level officials for any or all of the following basis: for his race, for reporting discriminatory practices, for filing a workers compensation claim, [and] for filing a charge of discrimination with the [Equal Employment Opportunity Commission ("EEOC")]."[1] (Sec. Am. Compl. at 2.) Simmons complains that he was subject to racial and gender jokes, greater performance requirements than his non-minority peers, and was wrongfully terminated. Cadence removed *Simmons II* to this Court on the basis of federal question and diversity jurisdiction. On March 19, 2008, the District Court dismissed Simmons'

---

1 The Court refers to Simmons' retaliation claims as his "Retaliation Claim," but, as he explains in his response brief, the term encompasses a number of retaliation claims, such as "denial of benefits, harassment, negative evaluation, lack of promotion, lack of a raise, change of job responsibilities/support, significantly increased travel, change in compensation, layoff, and in all likelihood negative job references." (Pl.'s Resp. Br. at 6.)

pendant state law claims for defamation, workers compensation retaliation, and intentional infliction of emotional distress, all three of which were barred by the statute of limitations. (*Simmons II*, Order of Mar. 19, 2008.)

Cadence contends that *res judicata* bars Simmons' claims in *Simmons II* because: (i) the parties to *Simmons II* and *Simmons I* are identical; (ii) the judgment in *Simmons I* was rendered by a court of competent jurisdiction; (iii) *Simmons I* concluded with a final judgment on the merits; and (iv) the claims all arose out of the same transaction–Cadence's employment of Simmons. The *Simmons I* Judgment was final November 20, 2007. (*Simmons I*, No. 3:05-CV-1921-K (BH), J. of Nov.16, 2007.) Plaintiff contends that he amended his complaint in *Simmons I* to defer his Retaliation Claim[2] because, at that time, he had not received his right-to-sue letter from the EEOC. (Pl.'s Resp. Br. at 4.)

## **Standard of Review**

### *Summary Judgment Standard*

When the facts and law, as reflected in the pleadings, affidavits, and other summary judgment evidence, show that no reasonable trier of fact could find for the nonmoving party as to any material fact, summary judgment is warranted. *See* FED. R. CIV. P. 56; *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). "The moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate

---

2 As Simmons explains in his Response to Cadence's Motion for Summary Judgment, he initially filed his racial discrimination suit with the expectation that both charges would be merged together (racial discrimination and retaliation). (Pl.'s Resp. Br. at 4.) The Court notes that Simmons never moved to consolidate *Simmons II* with *Simmons I*.

the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 325). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991).

The nonmovant is then required to go beyond the pleadings and designate specific facts that prove the existence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether genuine issues of material fact exist, "factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that a controversy exists." *Lynch Props.,* 140 F.3d at 625; *See also Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005). "If the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

Plaintiff in this case is proceeding *pro se*. Therefore, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam).

### *Res Judicata Standard*

Res judicata ensures the finality of decisions. *Brown v. Felsen*, 442 U.S. 127, 131 (1979). Under res judicata, "a final judgment on the merits bars further claims by parties or their privies based on the same cause of action." *Id.* (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)). "Res judicata thus encourages reliance on judicial decisions, bars vexatious litigation, and frees the courts to resolve other disputes." *Brown*, 442 U.S. at 131.

The doctrine forecloses "the relitigation of claims that were or could have been raised in a prior action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 312-13 (5th Cir. 2004) (citation omitted); *In re Southmark Corp.*, 163 F.3d 925, 934 (5th Cir. 1999). "Res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." *Brown*, 442 U.S. at 131.

To show that a claim is barred by res judicata, the moving party must show that: (1) the parties in both the prior suit and current suit are identical; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was a final judgment on the merits; and (4) plaintiff raised the same claim or cause of action in both suits. *Davis*, 383 F.3d at 313. For the fourth element, the Fifth Circuit has adopted a "transactional" test for determining whether two suits involve "the same claim or cause of action." *See Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395 (5th Cir. 2004). "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Id.* at 395-96 (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)).[3]  According to the Fifth Circuit Court of Appeals, the

---

3  RESTATEMENT (SECOND) OF JUDGMENTS § 24 (1982) provides in part as follows:

(1) When a valid and final judgment rendered in an action extinguishes the plaintiff's claim pursuant to the rules of merger or bar . . . ,  the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

Comment c to REST 2D JUDGE § 24 provides in part as follows:

*Transaction may be single despite different harms, substantive theories, measures or kinds of relief* . . . . That a number of different legal theories casting liability on an actor

Restatement's transactional test "represents the modern view" and is the preferable test. *Nilsen v. City of Moss Point, Miss.,* 701 F.2d 556, 560 n. 4 (5th Cir. 1983) (en banc). The critical determination is "whether the two actions are based on the 'same nucleus of operative facts.'" *Petro-Hunt*, 365 F.3d at 396 (quoting *In re Southmark Corp.*, 163 F.3d at 934).

## Analysis

The Court will now determine whether this case meets the four requirements for Simmons' claims to be barred by res judicata. First, the parties in this action are identical to the parties in *Simmons I*. Second, Simmons cannot deny that this Court, a court of competent jurisdiction, rendered the previous judgment in *Simmons I*. Third, despite Simmons' claim that he "is still exploring [his] options"[4] with respect to the judgment in *Simmons I*, it is undisputed that on November 16, 2007, the District Court entered an order of dismissal with prejudice which constitutes a final judgment "on the merits" for res judicata purposes.[5] *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). On November 20, 2007, the District Court overruled Plaintiff's objections and held that "the judgment filed on November 16, 2007, remains undisturbed."[6] Simmons failed to appeal, and the time to appeal expired. *See* FED. R. APP. P. (a)(1)(A). Without question, the first three criteria are satisfied.

---

may apply to a given episode does not create multiple transactions and hence multiple claims. This remains true although the several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts, or would call for different measures of liability or different kinds of relief.

4  Pl.'s Am. Aff. at ¶ 5.

5  *Simmons I*, 2007 WL 4104373, at *14.

6  *Simmons I*, No. 3:05-CV-1921-K(BH), at doc. 74.

Finally, the Court must decide whether *Simmons I* and *Simmons II* arise from the same nucleus of operative facts. On September 27, 2005, Simmons filed suit against Cadence in *Simmons I* for (1) "Race Harassment and Hostile Work Environment," (2) "Violation of 42 U.S.C. § 1981," (3) "Violation of the American Disabilities Act (ADA)," and (4) "Retaliation." (*Simmons I*, No. 3:05-CV-1921-K(BH), at doc. 1.) On January 25, 2006, Simmons filed an Amended Complaint, eliminating his Retaliation Claim because he had not then received a right-to-sue letter from the EEOC on the Retaliation Claim. (*Simmons I*, 3:05-CV-1921-K(BH), at doc. 3.) On January 10, 2007, Simmons received his right-to-sue letter on the Retaliation claim. (*Simmons II*, Am. Notice of Removal, at 44 (Ex. A. to Pl.'s Sec. Am. Compl.))

After Simmons received his notice of right to sue on the Retaliation Claim, rather than seeking leave to amend his complaint in *Simmons I* to restore the Retaliation Claim that he had voluntarily withdrawn,[7] Simmons filed *Simmons II* on April 10, 2007, in the 162nd Judicial District Court for Dallas County, Texas. (Am. Notice of Removal, App. A, at 1.) On November 16, 2007, the District Court in *Simmons I* granted summary judgment in favor of Cadence on Simmons' claims of racial discrimination, racial harassment, and hostile work environment. *Simmons I*, 2007 WL 4104373, at *1.

*Simmons II* involves "the same nucleus of operative fact" as *Simmons I*. In fact, Simmons admits that "some facts that [he] used in [his] racial discrimination suit . . . did contribute to the retaliation that occurred, especially in reference directly to how those facts brought about [his]

---

7 Simmons was well within the deadline for motions to seek leave to amend in *Simmons I* when he received the right-to-sue letter on January 10, 2007. The deadline for seeking leave to amend was April 20, 2007. (*Simmons I*, 3:05-CV-1921-K(BH), at doc. 17.) Plaintiff filed suit for retaliation in state court on April 10, 2007. (*Simmons II*, Am. Notice of Removal, App. A, at 1.)

layoff. (Pl.'s Am. Aff. at ¶ 4.) Simmons alleges in *Simmons II* that while working for Cadence, he

was harassed, discriminated, and/or retaliated against by his supervisors, coworkers, and upper level

officials as follows: for his race, for reporting discriminatory practices, for filing a workers

compensation claim, and for filing a charge of discrimination with the EEOC. (*Id.*) Simmons

complains that he was subject to racial and gender jokes,[8] greater performance requirements than

his non-minority peers,[9] and was wrongfully terminated. Simmons filed an EEOC charge prior to

his termination. (Pl.'s Sec. Am. Compl. at 3, 5.) He claims the retaliation against him started on

July 21, 2003, when a coworker complained of a joke, referred to as the "Retelling a Fable" joke,[10]

---

[8] The allegedly discriminatory acts at issue in Plaintiff's complaint of racial discrimination in *Simmons I* included: "(1) managing Plaintiff differently than non-minority employees; (2) consistently subjecting Plaintiff to close scrutiny and counseling with respect to his job performance; (3) subjecting Plaintiff to greater performance requirements and expectations than his non-minority peers; (4) reduced compensation through interference with Plaintiff's ability to earn bonuses by assigning him to less profitable projects; and (5) ignoring Plaintiff's complaints of disparate treatment based on his race . . . . Plaintiff also [alleged] that (6) Defendant discriminated against him when he was not promoted from the AE3 level to the AE4 level after his 2003 performance review." *Simmons I*, 2007 WL 4104373, at *7.

[9] Plaintiff's claim of racial harassment and hostile work environment in *Simmons I* included: "(1) the lack of a cubicle assignment; (2) inappropriate and derogatory comments, including email messages; (3) assignment to less beneficial projects than similarly situated non-Black co-workers; (4) poor performance review and bonus compensation; and (5) the requirement that Plaintiff demonstrate his knowledge of Cadence applications to co-workers . . . . Plaintiff also [alleged] that (6) he was assigned an unreasonable amount of work that ultimately resulted in his claim of a workplace injury." *Simmons I*, 2007 WL 4104373, at *11.

[10] In *Simmons I*, regarding Plaintiff's allegation of multiple derogatory email messages, the Court found that only the July 9, 2003 email updating Aesop's fable of the ant and the grasshopper (the "Retelling a Fable" joke) was supported by the evidentiary record and was relevant to Simmons' claim for racial harassment. The Court found that "even this claim fails because the racially harassing nature of the email is tenuous and is based on Plaintiff's own subjective belief." *Simmons I*, 2007 WL 4104373, at * 12. Simmons alleges in *Simmons II* that the reporting of this joke by another employee is the protected activity that triggered Cadence's retaliation against Simmons. (Pl.'s Resp. at 2-3.) This is simply one example of Plaintiff's collateral attack on the judgment in

forwarded by Simmons' supervisor, Mr. Rock.  Subsequently, Simmons reported to HR that the

attitude shown in the joke resulted in Mr. Rock's unfounded performance review of Simmons.  He

claims that he was subjected to retaliatory conduct such as discriminatory job assignments, also

complained of in *Simmons I*.   According to Simmons, he complained to Mr. Rock and HR

management, all the way up to the V-P level when he believed that Mr. Rock's actions were unjust

and discriminatory.  The retaliation allegedly ended in his termination on February 17, 2005.  The

facts in both actions are related in time, space, origin, and motivation, and they form a convenient

trial unit which conforms to the parties' expectations, as evidenced by the fact that Simmons

included the Retaliation Claim in his Complaint in *Simmons I* before he filed an Amended

Complaint in that action.  Even though Simmons complains of racial discrimination and racial

harassment and hostile work environment in *Simmons I* and retaliation in *Simmons II*, he cites many

of the same incidents in both suits to support his claims.

      The Court concludes that the operative facts in *Simmons I* and *Simmons II* constitute a series

of connected transactions and are the same claim because they "originated from the same continuing

course of allegedly discriminatory conduct."  *See Davis*, 383 F.3d at 314.

      "[A] plaintiff who brings a Title VII action and files administrative claims with the EEOC

must still comply with general rules governing federal litigation respecting other potentially viable

claims," including res judicata. *Davis*, at 316 (internal quotation marks omitted) (internal citation

omitted). In *Davis*, the plaintiffs' race discrimination and retaliation claims were barred by res

judicata because they failed to raise the claims in a prior discrimination suit even though all the

_____

*Simmons I* and an example of how the doctrine of res judicata protects the finality of judgments.

conduct complained of predated the filing of the first suit. *Id.* Like Simmons, the Davis plaintiffs

had not yet received right-to-sue letters from the EEOC. *Id.* The Fifth Circuit Court of Appeals

found the claims barred by res judicata, reasoning that the plaintiffs could have prevented their

claims from being precluded by requesting a stay in the prior case until their right-to-sue letters

arrived from the EEOC. *Id.*[11]

The facts in this case are very similar to those in *Davis* with this difference. Here, Plaintiff

actually brought his Retaliation Claim in *Simmons I*, but filed an Amended Complaint to eliminate

it because he had not yet received his right-to-sue letter. Although the *Simmons I* deadline to request

leave to amend his complaint to restore the Retaliation Claim had not expired when Simmons

---

11  Other courts require a plaintiff in his or her first action to assert a federal discrimination claim even without a right-to-sue letter from the EEOC, anticipating that the plaintiff will be able to obtain that letter while the first action remains pending. *See Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 63 (1st Cir. 2000) (noting plaintiff received right-to-sue letter two years before court entered judgment in first action and could have easily sought to amend his complaint during that time to include Title VII claim); *Havercombe v. Dep't. of Educ. of Commonwealth of P.R.*, 250 F.3d 1, 8 (1st Cir. 2001)(noting that plaintiff, a few weeks before trial on first action, received his right-to-sue letter on conduct occurring after he had filed his first complaint, and he could then have moved to amend his first complaint to add those additional facts); *Churchill v. Star Enters.*, 183 F.3d 184, 191 (3d Cir. 1999) (noting employee had time after receiving right-to-sue letter to consolidate her first and second actions); *Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998) (finding plaintiff's claims barred by res judicata where she could have obtained a right-to-sue letter and perfected her claim during the two-year pendency of her first action); *Heyliger v. State Univ. & Cmty. Coll. Sys.*, 126 F.3d 849, 855-56 (6th Cir. 1997) (faulting employee for not obtaining right-to-sue letter and then seeking to amend first complaint, where plaintiff could have requested right-to-sue letter from the EEOC three years before court decided first lawsuit); *Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 225-26 (7th Cir. 1993) (holding that "[p]arties to Title VII actions enjoy no immunity from *res judicata*[.]"); *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 724-25 (9th Cir. 2001) (Title VII claims not exempt from claim preclusion where plaintiffs failed to seek a stay of proceedings or to amend their complaint).

Thus a plaintiff's obligation to assert claims arising out of the same transaction continues throughout the course of the litigation. In this case, *Simmons II* was removed here from state court on June 11, 2007, and judgment was not entered in *Simmons I* until five months later, November 16, 2007. Yet Simmons failed to reassert his Retaliation Claim in *Simmons I*, or to move for consolidation of *Simmons II* with *Simmons I*.

received his right-to-sue letter, Simmons chose instead to bring the retaliation claims in a new state court action which was then removed here. Like the plaintiffs in *Davis*, Simmons could have requested a stay in *Simmons I* and thereby prevented his Retaliation Claim from being precluded by res judicata. Even more compelling, he could have requested leave to amend his complaint to replead the Retaliation Claim in *Simmons I* after he received his right-to-sue letter from the EEOC. The judgment in *Simmons I* was entered on November 16, 2007, five months after Simmons' Retaliation Claim was ripe for determination.[12]

Simmons contends that the Court should not apply the doctrine of res judicata to his claims in *Simmons II* for equitable reasons. Simmons claims that he consulted counsel who did not take his case but who advised him that his claims constituted two separate causes of action. (Pl.'s Resp. Br. at 17.) Simmons also argues that he felt he would have "jeopardized his first lawsuit" if he amended his complaint in *Simmons I* to add the Retaliation Claim after he received his right-to-sue letter. (*Id*.) Even pro se litigants are charged with knowing and following the law. *Teemac v. Henderson*, 298 F.3d 452, 458 (5th Cir. 2002). Res judicata is a doctrine of legal right. *Nations v. Sun Oil Co. (Delaware)*, 705 F.2d 742, 744 (5th Cir. 1983). It is a bar against relitigation between parties to an initial suit. (*Id*.) The United States Supreme Court has cautioned courts against weighing the equities when res judicata applies: "the doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of . . . res judicata .'" *Federated Dept. Stores, Inc. v. Moite*, 452 U.S. 394, 401 (1981) (quoting

_____

12 In the decision recommending that Cadence's motion for summary judgment in *Simmons I* be granted, the United States Magistrate Judge recognized that *Simmons II* was pending. *Simmons I*, 2007 WL 4104373, at *6 n3.

*Heiser v. Woodruff*, 327 U,S, 726, 733 (1946)).  Even if equity were a consideration, Simmons'

reasons for failing to comply with the law against splitting a cause of action are not persuasive.

Simmons also contends that he could prevail in a retaliation claim without the retaliation

being the result of racial discrimination.  (Pl.'s Resp. Br. at 21.)  Undoubtedly, a plaintiff could bring

such an action.  However, in this case res judicata is based on the nucleus of operative facts that

Simmons relies on, not on a different set of facts.  Simmons' case falls squarely within the precedent

set by *Davis*.  *See Davis*, 383 F.3d at 314.

It is clear from the pleadings and the records in *Simmons I* that the claims in *Simmons II*

arose from the same nucleus of operative facts as the claims in *Simmons I* and that the claims predate

the filing of that action.  The Court finds that any incidences of alleged retaliation arising out of

Simmons' employment with Cadence could have been raised in *Simmons I*.  Simmons could have

prevented the Retaliation Claim from being precluded by: (1)  requesting a stay in *Simmons I* until

he received his right-to-sue letter from the EEOC; (2) seeking leave to amend the complaint when

he received the right-to-sue letter; or (3) moving for consolidation of *Simmons I* and *Simmons II*.

Simmons chose a different course of conduct, and his claims in *Simmons II* are barred by res

judicata.

## Recommendation

The Court recommends that Cadence's Motion for Summary Judgment be granted and that

Simmons' claims be precluded as barred by the doctrine of res judicata.

SO RECOMMENDED, September 8, 2008.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).